Miles Ehrlich (Cal. Bar No. 237954)
miles@ramsey-ehrlich.com
Katharine A. Kates (Cal. Bar No. 155534)
katharine@ramsey-ehrlich.com
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
Tel:   (510) 548-3600
Fax:   (510) 291-3060

*Attorneys for Defendant Hedley's Humpers, Ltd.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | Case No.: CR-14-00374 WHA |
|---|---|
| Plaintiff, | **DECLARATION OF KATHARINE A. KATES IN SUPPORT OF DFENDANT HEDLEY'S HUMPERS' SENTENCING MEMORANDUM** |
| vs. | |
| HEDLEY'S HUMPERS, LTD., | The Honorable William H. Alsup |
| Defendant. | Date: July 7, 2015<br>Time: 2:00 p.m.<br>Place: Courtroom 8, 19th Floor |

I, Katharine A. Kates, declare and state as follows:

1.   I am an attorney duly licensed to practice law in the State of California and I am counsel at the law firm of Ramsey & Ehrlich LLP.  Together with Miles Ehrlich, I present defendant Hedley's Humpers, Ltd. ("Hedley's") in the above-captioned case.  I make the following statements based on my own personal knowledge of this litigation and under penalty of perjury.

2. After the indictment, Hedley's cooperated with the government by, among other things, making employees available to be interviewed by the U.S. Attorney's Office and federal investigative agents. One of these employees was Lalya Diabira, who has handled exports in Hedley's Paris office for many years. In her interview with the government on February 5, 2015, Ms. Diabira acknowledged that she was the contact at the Paris office for Polenske, and that she was responsible for creating the export documents for Polenske's shipments from the Paris office. She explained that Stephen Hedley, the owner of Hedley's, did not deal with the paperwork. Ms. Diabira also stated that, at Polenske's request, or the request of one of his assistants, she personally altered descriptions of certain items on the export paperwork for certain shipments during the relevant time period. Further, in interviews with counsel, Ms. Diabira confirmed that she carried out Polenske's request to alter paperwork for the 2006-2009 shipments without consulting any other personnel at Hedley's, specifically including Stephen Hedley.

3. As part of the discovery in this matter, the government provided defense counsel with email correspondence between NOAA Special Agents Nicholas Call and Derek Roy, and Customs and Border Patrol Special Agent Michele Mire. A true and correct copy of an email thread dated June 1, 2012, through September 21, 2012, between these agents is attached as Exhibit A. As part of that email thread, on July 27, 2012, Special Agent Call wrote to Agent Mire: "I would like to change the selectivity for the Polenske investigation. I would like to change the target to HEDLEY'S HUMPERS." In a follow up email on August 3, 2012, Special Agent Call wrote to Special Agent Mire: "we can cancel the list you mentioned and add Hedley's. No specific HTS numbers or products, *but would like to see all imports flagged.*" (emphasis added).

4. Also included in the discovery was email correspondence between Michael Polenske and Steve Hedley from the fall of 2013. At this time, Polenske was cooperating with the government and acting as its agent. In the past, Polenske had made limited

shipments through Hedley's, having shipped one container per year, at most. Yet in an email dated September 30, 2013, Polenske told Mr. Hedley that he was expecting a potentially significant increase in business with Hedley's. Polenske stated that he had been consulting with Restoration Hardware, and that he was "begin[ning] to put together a much bigger buying strategy that will allow us to bring an antiques selection into 50+ galleries across the country over the next 5 years . . . I would be interested in talking about what pricing would look like for a volume of containers." A true and correct copy of the email thread containing the September 30, 2013 email is attached hereto as Exhibit B.

4. After further correspondence in the ensuing weeks, Polenske arranged for a face-to-face meeting with Steve Hedley, which took place on November 11, 2013, at Polenske's private club in New York City, called "Soho House." The meeting was recorded by federal agents and a transcript of this meeting was provided to defense counsel. Attached hereto as Exhibit C are a collection of true and correct copies of separate excerpts from the transcript of this meeting. At this meeting, Polenske described how he expected a high volume of shipments from Restoration Hardware, and that the shipments involved sending antiques from Europe to China. He explained that: "[t]hey're going bigger and bigger, Restoration Hardware. . . . And one of the things that I'll be doing for them is building that business for them. So we're going to build an antiques platform." Exhibit C, File 3—7. *See also* File 3—17-18. Further, he mentioned the possibility of an exponential increase in business for Hedley's: "are we talking one container a month? . . . [T]en containers a month? . . . I don't know." Exhibit C, File 3 – 24. He also asked Steve if he would be interested in handling this business. *See* Exhibit C, File 3 -- 24-25.

5. Later in their discussion, Polenske brought up CITES at several points, in an apparent effort to get Mr. Hedley to say that he would be prepared to circumvent the

DECLARATION OF KATHARINE A. KATES IN SUPPORT OF
DEFENDANT HEDLEY'S HUMPERS SENTENCING MEMORANDUM
CR 14-00374 WHA

- 3 -

CITES restrictions and licensing requirements on Polenske's behalf. Mr. Hedley, however, repeatedly emphasized the need to comply with CITES. For example, Polenske asked: "So how - has there been any shift on CITES[?]" Mr. Hedley responded: "On CITES, you don't want to get involved in at all buying anything that's part of the CITES convention, which seems to expand all the time." Exhibit C, File 4 – 5. And, when Polenske indicated that he may wish to export wildlife protected by CITES, Mr. Hedley explained: "Well, I mean, we can import from Europe. We can apply for the CITES license . . . ship those things airfreight and get an import CITES license." Exhibit C, File 4 – 9-10. *See also* Exhibit C, File 4 – 6-8.

6. Approximately one month later, Polenske initiated further contact with Hedley's, leading eventually to the offense conduct that forms the factual basis of the Company's guilty plea.

7. Following the entry of Hedley's guilty plea, Hedley's bank of over forty years, Barclay's Bank, completely terminated its banking relationship with Hedley's in all respects, including accounts and loans. It also terminated Mr. Hedley's personal accounts. A true and correct copy of the letter that Hedley's received from Barclay's Bank, dated April 30, 2015, is attached hereto as Exhibit D. Although Hedley's has attempted to establish a business banking relationship with other institutions, it has thus far been unable to find another bank that will accept Hedley's as a client.

I make this declaration in Berkeley, California, under the laws of the United States.

Dated:        June 30, 2015              Respectfully Submitted,

                                         RAMSEY & EHRLICH LLP

                                         //s//

                                         KATHARINE A. KATES
                                         *Attorneys for Hedley's Humpers, Ltd.,
                                         and Stephen Hedley*